UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SOLID 21, INC.,

                        *Plaintiff,*

– *against* –

JOMASHOP INC. f/k/a GIFTPORTS INC.,

                        *Defendant.*

Case No. 19 Civ. 1179 (MKB) (SJB)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
JOMASHOP'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, TO STAY THE ACTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

   A.  The Allegedly Infringing Products ................................................................... 3

   B.  Solid 21's Use of the RED GOLD® Trademark .............................................. 4

   C.  Plaintiff's Aggressive Enforcement of Its Trademark ...................................... 5

ARGUMENT ....................................................................................................................... 6

   I.    Plaintiff Fails to Plead Facts Sufficient to
       Plausibly State a Claim for Trademark
       Infringement, False Description or Unfair Competition ................................. 7

       A.  Plaintiff Improperly Relies on Exclusively Conclusory Allegations to Establish
          Likelihood of Consumer Confusion ...................................... 8

       B.  Jomashop's Use of the Term "Red Gold" Is Protected by Fair Use ........................ 10

          1.  Jomashop's Did Not Use "Red Gold" As A Mark ........................................... 11

          2.  Jomashop's Use of "Red Gold" Was Purely Descriptive ................................ 13

          3.  Plaintiff Fails to Sufficiently Allege that Jomashop Acted in Bad Faith ........... 15

       C.  Plaintiff Fails to Allege Facts Sufficient to State a Claim for Damages ................. 17

   II.  Plaintiff Fails to State a Claim for Trademark Dilution
       Under Both the Lanham Act and New York Law ....................................... 18

   III.  Plaintiff Fails to State a Claim Under New York General Business Law § 349 .......... 20

   IV.  In the Alternative, The Present Action Should Be Stayed, Pending
       Resolution of the Cases Involving The Brands Producing the Watches at Issue .......... 21

CONCLUSION ................................................................................................................. 23

i

# TABLE OF AUTHORITIES

**CASES**                                                                                                              **PAGE(s)**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005) ...........................................................................7, 12

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
    537 F.2d 4 (2d Cir. 1976) .............................................................................15, 16

*Alvarado v. GC Dealer Servs. Inc.*,
    No. 18CV2915SJFSIL, 2018 WL 6322188 (E.D.N.Y. Dec. 3, 2018)...................22

*American Footwear Corp. v. General Footwear Co.*,
    609 F.2d 655 (2d Cir. 1979) ...............................................................................7

*Arnold v. ABC, Inc.*,
    No. 16-CV-1747 (GBD), 2007 WL 210330 (S.D.N.Y. Jan. 29, 2007)...................... 13, 16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................6, 7

*B&L Sales Assocs. v. H. Daroff & Sons, Inc.*,
    421 F.2d 352 (2d Cir. 1970) ..........................................................................12, 13

*Boarding School Review, LLC v. Delta Career Educ. Corp.*,
    No. 11 CIV. 8921 (DAB), 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013)........................18, 19

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
    70 F.3d 267 (2d Cir. 1995) .........................................................................*passim*

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
    11 F. Supp. 3d 317 (E.D.N.Y. 2014)...................................................................10

*Cartier, Inc. v. Sardell Jewelry, Inc.*,
    294 F. App'x 615 (2d Cir. 2008) ........................................................................9

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
    125 F.3d 28 (2d Cir. 1997) .........................................................................*passim*

*Dessert Beauty, Inc. v. Fox*,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009)......................15

*Dow Jones & Co. v. International Secs. Exch., Inc.*,
    451 F.3d 295 (2d Cir. 2006) ........................................................................8, 20

**CASES**                                                                   **PAGE(s)**

*E.A. Sween Co. v. A&M Deli Express, Inc.*,
   No. 17-CV-2514-RJD-RML, 2018 WL 1283682 (E.D.N.Y. Mar. 9, 2018),
   *aff'd*, 2019 WL 4744696 (2d Cir. 2019)..................................................................7

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ......................................................................9

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
   726 F. Supp. 25 (E.D.N.Y. 1989) ..............................................................17

*George Basch Co. v. Blue Coral, Inc.*,
   968 F.2d 1532 (2d Cir. 1992) ...................................................................17

*Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*,
   706 F. Supp. 221 (S.D.N.Y. 1989)........................................................8, 20

*Gruner & Jahr USA Publ'g v. Meredith Corp.*,
   991 F.2d 1072 (2d Cir. 1993) ...............................................................7, 8

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003) .......................................................21

*JA Apparel Corp. v. Abboud*,
   568 F.3d 390 (2d Cir. 2009) .....................................................11, 15, 16

*JA Apparel Corp. v. Abboud*,
   682 F. Supp. 2d 294 (S.D.N.Y. 2010) ..........................................11, 18

*JBCHoldings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013) ..........................................11, 16

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013) ...................................................................11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) ..........................................................................*passim*

*Kuklachev v. Gelfman*,
   600 F. Supp. 2d 437 (E.D.N.Y. 2009)......................................................19

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ................................................................................21

**CASES**                                                                                       **PAGE(s)**

*Life Indus. Corp. v. Ocean Bio-Chem, Inc.*,
  827 F. Supp. 926 (E.D.N.Y. 1993)....................................................................................17

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  156 F. Supp. 3d 425 (S.D.N.Y. 2016), *aff'd*, 674 F. App'x 16 (2d Cir. 2016).......................18

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
  841 F. Supp. 2d 753 (S.D.N.Y. Jan. 11, 2012) ....................................................................20

*Marine Travelift, Inc. v. K. Graefe & Sons Corp.*,
  No. 16 CV 2068 (VB), 2016 WL 8711453 (S.D.N.Y. June 3, 2016) ..............................22, 23

*Mattel, Inc. v. Robarb's, Inc.*,
  139 F. Supp. 2d 487 (S.D.N.Y. 2001) .................................................................................18

*Maurizio v. Goldsmith*,
  230 F.3d 518 (2d Cir. 2000) ...............................................................................................21

*Naked Cowboy v. CBS*,
  844 F. Supp. 2d 510 (S.D.N.Y. 2012) ................................................................... 12, 16, 17

*Nature's Bounty, Inc. v. Basic Organics*,
  432 F. Supp. 546 (E.D.N.Y. 1977)................................................................................13, 15

*Para Labs. Inc. v. Better Botanicals, Inc.*,
  No. CV 98-1523, 1998 WL 670239 (E.D.N.Y. May 6, 1998) ..........................................14, 15

*Public Free Will Corp. v. Verizon Commc'ns Inc.*,
  No. 15-CV-6354-RRMJO, 2017 WL 1047330 (E.D.N.Y. Mar. 17, 2017).........................9, 10

*Real News Project, Inc. v. Independent World Television, Inc.*,
  88 U.S.P.Q.2d 1299 (S.D.N.Y. 2008) .....................................................................................7

*Savin Corp. v. Savin Grp.*,
  391 F.3d 439 (2d Cir. 2004) ...........................................................................................10, 16

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002) ..................................................................................................8

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
  No. 96 CIV. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. 1997).................................................21

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
  588 F.3d 97 (2d Cir. 2009) ..................................................................................................19

## CASES                                                                    PAGE(s)

*Venetianaire Corp. of Am. v. A&P Import Co.*,
   429 F.2d 1079 (2d Cir. 1970) ...........................................................................15

*Vitolo v. Mentor H/S, Inc.*,
   426 F. Supp. 2d 28 (E.D.N.Y. 2006), *aff'd*, 213 F. App'x 16 (2d Cir. 2007) ........................21

*Wilson v. Nw Mut. Ins. Co.*,
   625 F.3d 54 (2d Cir. 2010) ...........................................................................21

*Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*,
   No. 01 CIV. 1044 (HBP), 2005 WL 912184 (S.D.N.Y. Apr. 19, 2005)...............................22

## STATUTES

Fed. R. Civ. P 12(b)(6) ...........................................................................6, 8

15 U.S.C. § 1065 ...........................................................................4

15 U.S.C. § 1114 ...........................................................................7

15 U.S.C. § 1115(b)(4) ...........................................................................11

15 U.S.C. § 1125 ...........................................................................9

15 U.S.C. § 1125(c) ...........................................................................18

N.Y. Gen. Bus. Law § 349 ...........................................................................20

Defendant Jomashop Inc. f/k/a Giftports Inc. ("Defendant" or "Jomashop") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Solid 21, Inc.'s ("Plaintiff" or "Solid 21") Second Amended Complaint ("Second Amended Complaint" or "Compl.")[1] in its entirety, with prejudice, or, in the alternative, to stay the present action pending resolution of several related cases.

## PRELIMINARY STATEMENT

This is now Plaintiff's third attempt to plausibly state claims for trademark infringement, dilution, false description, and unfair competition against Jomashop.  Once again, Plaintiff has failed to do so.  The Second Amended Complaint is replete with conclusory allegations unsupported by facts, both with respect to Plaintiff's affirmative claims about its own brand and guesses made upon "information and belief" about Jomashop.  Most significantly, Plaintiff fails entirely to plead facts sufficient to establish that Jomashop's re-sale of watches branded by well-known companies using their own, well-known house brands, such as Gucci and Omega, are likely to cause confusion among consumers looking for Chris Aire branded watches in what plaintiff calls the "Signature RED GOLD® Collection," or that Jomashop's use of the term "red-gold" was intentional infringement or done in bad faith.  Absent such allegations, Plaintiff's Second Amended Complaint fails to state plausible claims for trademark infringement, unfair competition, or false description.

Moreover, Plaintiff's overbroad attempt to enforce a monopoly on the descriptive term "red gold" so it is not used to identify a material used in the composition of certain watches, not only runs contrary to the intent and purpose of the Lanham Act and trademark law more broadly, but also ignores that Jomashop's use of the term "red gold" is protected by the doctrine of good faith

---

[1] The Second Amended Complaint and its accompanying exhibits are attached collectively as Exhibit A to the Declaration of William Thomashower, executed on October 17, 2019.

fair use.  In the examples provided by Plaintiff itself, Jomashop's use of the term "red gold" was demonstrably non-trademark (e.g. not meant to designate a source of origin) but was merely descriptive of a color or metal case material, without any actual showing of bad faith.  It is simply not plausible to assert that when a consumer sees the phrase "18k Red Gold" following use of a prominent, luxury watch brand like "Omega," that he/she will believe that the phrase "red gold" signifies that the watch originated from Plaintiff's brand, rather than that the watch manufactured by the Omega brand contains an alloy between gold and a red-hued metal, like copper.

Nor has Plaintiff adequately alleged that its "RED GOLD®" mark is famous enough to merit protection under trademark dilution law.  In order to maintain a dilution claim, the Lanham Act requires that a mark must be "universally" recognized—a household brand—but the Second Amended Complaint fails to allege any facts concerning its sales figures, advertising spend, or degree of recognition in the market to support its conclusory allegation that the mark is "famous." A simple Google search belies that claim: Aire and his "Signature RED GOLD Collection" do not appear in the first three pages of results in a search for "red gold."  Absent the requisite factual showing to make fame plausible, and in light of Jomashop's demonstrable fair use, Plaintiff's federal and state dilution claims must be dismissed.

Finally, Plaintiff's efforts against Jomashop are misplaced.  Jomashop does not, itself, brand, label, or manufacture the allegedly infringing products.  Rather, as the Second Amended Complaint concedes, Jomashop is a reseller of genuine products manufactured and labeled by other prominent brands, many of which are already defending identical lawsuits by Plaintiff in other cases.  To the extent any court should adjudicate Plaintiff's overbroad assertion of exclusivity in the use of its mark, this should be done in the first instance by the original manufacturers adopting that descriptive term, not by Jomashop, a mere reseller.

In all events, the Court should intervene to prevent Plaintiff from imposing further costs or burden on Jomashop as a result of a copycat complaint that, even after three tries, does not plausibly state any cause of action.

## STATEMENT OF FACTS

Defendant Jomashop is an online retailer and wholesaler reselling genuine products, including, among other things, watches, jewelry, handbags, and sunglasses.  As the Second Amended Complaint and allegedly infringing products make clear, Jomashop does not itself manufacture or brand the accused watches posted for sale on its website.  Rather, Jomashop sells products from well-known and well-respected brands, such as Omega, Tag-Heuer, and Breitling, using descriptive specifications and details provided by those brands.  These facts are a matter of public knowledge, as shown at Jomashop's website, www.Jomashop.com.

**A.    The Allegedly Infringing Products**

Among the products for sale on Jomashop.com are the luxury watches identified by Plaintiff in the Second Amended Complaint and its accompanying exhibits: the Gucci Timeless Red Gold PVD Men's Watch Item No. YA126410, the Seamaster Acqua Terra Auto Grey Dial 18k Red Gold and Stainless Steel Men's Watch by Omega, the Portugieser White Dial 18 Carat Red Gold Automatic Men's Watch by IWC, and several others identified by name only in Exhibit 14 to the Second Amended Complaint (the "Allegedly Infringing Products").  (Compl. Exs. 11–14.)  Based on the photographs of Jomashop's website attached by Plaintiff, each watch appears with its respective house brand name (Gucci, Omega, or IWC), prominently displayed on both the watch face and above the watch name and description.  (*Id.* ¶¶ 25–28, Exs. 11–14.)  Each watch retails from around $1,000 to nearly $50,000 in one case.  (*Id.* (the Hublot watch retails for $48,700).)  The Second Amended Complaint concedes that these are former descriptions and that

Jomashop ceased to use the term "red gold," without prejudice, in response to Plaintiff's claims. (Compl. ¶ 30.)

**B.     Solid 21's Use of the RED GOLD® Trademark**

According to the Second Amended Complaint, Solid 21 has owned the federally registered trademark for the term "RED GOLD" since 2003.   (Compl. ¶ 2.)   Since the mark was not challenged within 5 years of registration, Plaintiff filed the papers required under 15 U.S.C. § 1065 to make its right to use the registered mark "incontestable" unless the mark is "the generic name for the goods."  15 U.S.C. § 1065(4); *see also* Compl. ¶ 3.  Based on the allegations in the Second Amended Complaint, Plaintiff exclusively uses the term "RED GOLD" to describe a particular collection of watches from the brand primarily identified and associated with Chris Aire, the founder of Solid 21.  (*Id.* ¶¶ 11–12, 16–22, Exs. 6–10.)  The luxury watches branded by Plaintiff, including the Chris Aire Watch – Parlay GMT Black, the Chris Aire Watch – Aire Traveler II GMT Watch, and the Aire Conqueror Men's Watch, each have "Aire" printed on the watch face and are later described in smaller print as being part of "our Signature RED GOLD® Collection." (*Id.* Ex. 6, 8–10.)  Indeed, one of Plaintiff's advertisements does not even include the term "Red Gold," but rather associates Muhammad Ali with the Aire Traveler watch that appears to have a red or pink hue to the watch face.  (*Id.* Ex. 7.)

Plaintiff claims to have spent significant money and resources advertising its Red Gold collection in cities around the world and alleges that its brand is "heavily associated with and promoted by celebrities."  (*Id.* ¶¶ 15–17.)  Plaintiff provides no sales figures or data alleging the success of its advertising campaigns, likely because the figures do not demonstrate any significant association between "Red Gold" advertising and the watches actually sold by Plaintiff.  A basic Google search for "red gold" does not bring up Aire or Plaintiff's watches (or, indeed, any of the

Allegedly Infringing Products) anywhere in the first three pages of results.  This is public record evidence of the lack of association of the term "red gold" with any particular company—i.e., non-trademark use.

## C.    Plaintiff's Aggressive Enforcement of Its Trademark

The record shows that Plaintiff's interest in its mark does not lie in protecting its right to use the phrase "red gold" as a trademark to identify a unique source.  Rather, Plaintiff clearly makes a "business" out of aggressively enforcing its overbroad claims to the mark against prominent brands and watch manufacturers who use the term descriptively.  Just this year alone, Plaintiff has brought five other actions against luxury watch brands in federal courts, including against Richemont (which produces Montblanc and IWC watches, among other brands), Movado, Chopard, Breitling, and Ulysse Nardin (together, the "Related Cases").  *See Solid 21, Inc. v. Richemont, Montblanc, Baume & Mercier, et al.*, 19 Civ. 1262 (S.D.N.Y. Feb. 8, 2019); *Solid 21, Inc. v. Movado Retail Grp., Inc. et al.*, 19 Civ. 8093 (D.N.J. Mar. 7, 2019); *Solid 21, Inc. v. Chopard USA Ltd., et al.*, 19 Civ. 3089 (S.D.N.Y. Apr. 5, 2019); *Solid 21, Inc. v. Breitling USA, Inc., et al.*, 19 Civ. 0514 (D. Conn. Apr. 5, 2019); *Solid 21, Inc. v. Ulysse Nardin USA, et al.*, 19 Civ. 80474 (S.D. Fla. Apr. 5, 2019).  Each case recycles the same form complaint with identical causes of action and similar exhibits, none of which initially showed each defendant's allegedly infringing use.  (*See* D.E. 10 at 2.)  Unsurprisingly, three of the five cases are currently amidst similar briefing for motions to dismiss.  Indeed, prior to these five cases, the USPTO public record of this registered mark shows over <u>80</u> lawsuits filed between 2002 and 2013 on this single trademark registration.  (*See* TSOR at USPTO.gov for Plaintiff's registration.)

Plaintiff has grossly overreached the intended purpose of trademark law in an attempt to extort money from defendants who are compelled by the cost of federal litigation to settle rather

than defend cases to establish their descriptive use of the phrase "red gold" or the genericness of the mark.   Although Plaintiff concedes that Jomashop removed any instance of the phrase "red gold" from its website in a show of good faith upon receiving notice of Plaintiff's claims, and offered to stipulate to terms that would ensure the phrase did not appear on the website in the future, Plaintiff refused that resolution and insisted on pursuing implausibly alleged damages.   Plaintiff has twice amended its complaint in an attempt to plausibly state a claim for trademark infringement upon its overbroad theory, conceded in argument before the Court, that *any* use of the descriptive phrase "red gold" constitutes actionable infringement, no matter the context.   As Jomashop shows below, this is not the law.   And, even if Plaintiff had stated a claim—which it has not—the matter is more properly litigated by the major brands already embroiled in litigation with Plaintiff, because these brands are ultimately responsible for manufacturing, naming, and describing the Allegedly Infringing Products merely resold by Jomashop on its website.

Jomashop, therefore, moves this Court to dismiss Plaintiff's Second Amended Complaint, with prejudice or, in the alternative, to stay the present action pending resolution of the Related Cases.

## **ARGUMENT**

On a motion to dismiss under Federal Rule Civil Procedure 12(b)(6), courts take as true a complaint's well-pled factual allegations, but conclusory allegations masquerading as factual allegations are ignored and courts are not required to draw unreasonable inferences in a plaintiff's favor.   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation & quotations omitted).   The court must only accept the veracity of "well-pleaded factual allegations" that permit a court to draw a reasonable inference that the plaintiff is

entitled to relief.  *Id.* at 679.  As demonstrated below, the Second Amended Complaint should be dismissed because Plaintiff's allegations consist solely of conclusory allegations unsupported by facts and fail to state a claim on any of the eight asserted causes of action.

**I.      Plaintiff Fails to Plead Facts Sufficient to Plausibly State a Claim for Trademark Infringement, False Description or Unfair Competition**

In order to properly state a claim for trademark infringement, false description, or unfair competition[2] pursuant to 15 U.S.C. § 1114, plaintiff must establish that (1) it has a valid mark entitled to protection under the Lanham Act; (2) the defendant used the mark; (3) in commerce; (4) in connection with the sale or advertising of goods; and (5) without plaintiff's consent.  *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005).   Upon meeting those threshold elements, Plaintiff must then establish that defendant's use is "likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]."  *Id.*; *E.A. Sween Co. v. A&M Deli Express, Inc.*, No. 17-CV-2514-RJD-RML, 2018 WL 1283682, at *2 (E.D.N.Y. Mar. 9, 2018), *aff'd*, 2019 WL 4744696 (2d Cir. 2019).  The fact that Plaintiff holds an incontestable right in the trademark, which establishes "conclusive evidence . . . of the registrant's exclusive right to use the . . . mark in commerce," does not negate its obligation to properly plead that Jomashop has infringed that mark, or that Jomashop's "actual practice" is likely to cause confusion.  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (citation & quotations omitted); *Gruner & Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993) (no infringement of incontestable right for the

---

[2] The same standard applies to both the causes of action under the Lanham Act and Plaintiff's common law trademark infringement claim.  *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir. 1979); *Real News Project, Inc. v. Independent World Television, Inc.*, 88 U.S.P.Q.2d 1299, 1306 (S.D.N.Y. 2008) (elements of New York common law trademark infringement claim mirror Lanham Act claims).

descriptive mark "PARENTS").   Here, Plaintiff has failed to plausibly allege likelihood of infringement or that Jomashop's descriptive use infringed Plaintiff's mark.  Accordingly, the first, second, third, fifth and sixth causes of action in the Second Amended Complaint must be dismissed.[3]

### A.   Plaintiff Improperly Relies on Exclusively Conclusory Allegations to Establish Likelihood of Consumer Confusion

Even though there have been two amendments to the initial complaint, Plaintiff still relies almost entirely on conclusory statements without providing any supporting facts, and thus fails to properly state a claim under the Lanham Act.  Although the allegations in a complaint typically are accepted as true for the purposes of a Rule 12(b)(6) motion, that does not remain true when the allegations are not "well-pleaded."  *Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.*, 706 F. Supp. 221, 229 (S.D.N.Y. 1989).  Where allegations are "so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains," the complaint cannot survive a Rule 12(b)(6) motion.  *Id.* (citation & quotations omitted); *Dow Jones & Co. v. International Secs. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (assertion that defendant's use of the registered mark would "constitute trademark infringement and dilution, without any factual allegations" failed to state a claim under 12(b)(6)); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation & quotations omitted).)

---

[3] Although Jomashop does not dispute that Plaintiff has registered the term "RED GOLD®," Plaintiff's allegation that the mark is "strong and distinctive" is merely conclusory and simply incorrect.  (Compl. ¶ 32.)  The fact that a right in a mark is incontestable does not, in itself, make the mark strong or distinctive.  *See Gruner & Jahr USA Publ'g*, 991 F.2d at 1077–78 (finding it to be "perfectly consistent" that a mark be incontestable but the "mere word" be considered weak).  Moreover, "red gold," insomuch as it directly describes an alloy of gold and at least one other type of metal, like copper, is descriptive, if not generic, affording the mark, at most, a weak trademark protection.  *See id.*  But, as the Second Amended Complaint is facially insufficient in myriad other respects, Jomashop need not further address the strength of RED GOLD® in these papers.

Plaintiff presents sparse allegations with respect to consumer confusion, perfunctorily reciting as a mere conclusion that "Jomashop's use of RED GOLD® . . . has caused, and/or is likely to cause, confusion, reverse confusion, mistake, and/or deception" as to the source of the goods.  (Compl. ¶ 31.)  Not a single instance of actual or likely confusion is alleged.

Plaintiff's other allegations concerning confusion include the fact that both Plaintiff and Jomashop sell luxury watches (*id.* ¶ 34), and that the marks are similar because the first letter of each word is capitalized by Jomashop—notwithstanding the fact that Plaintiff's mark is exclusively used in all-caps and is more accurately identified in its own Second Amended Complaint by the phrase "Signature RED GOLD® Collection."  (*Id.* ¶¶ 34, 36, Exs. 6, 8–9 (Exhibit 7 does not even include the phrase RED GOLD®); *Public Free Will Corp. v. Verizon Commc'ns Inc.*, No. 15-CV-6354-RRMJO, 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) (failure to allege facts supporting claim that the marks were confusingly similar was insufficient to state a claim).)  Implausibly, Plaintiff finally alleges as a fact that, though its watches are "so expensive – often costing as much as a car," its affluent consumers make purchases "on a whim," and thus it does not "take a great deal to confuse such consumers."  (Compl. ¶ 35; *but see, Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008) (weighing sophistication of buyers factor in favor of <u>defendants</u> because "sophisticated buyers interested in luxury products would not mistake a Geneve for a Cartier").  Under *Iqbal*, the Court may reject allegations that "defy economic reason."  *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) (affirming dismissal of Second Amended Complaint because the theory of scienter was "implausible").

Even taken together, Plaintiff's allegations amount to nothing more than "[l]egal conclusions that track the text of 15 U.S.C. § 1125 and the *Polaroid* factors . . . insufficient to give

rise to a plausible claim." *Public Free Will*, 2017 WL 1047330, at *4; *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 346 (E.D.N.Y. 2014) (formulaic recitation of *Polaroid* factors accompanied by only legal conclusions is insufficient to state a claim for trademark infringement).  And, Plaintiff does not allege any instances of actual confusion among consumers, likely because there are none: Jomashop prominently displays the true, well-known watch brands which produce the Allegedly Infringing Products, as shown at the top of each webpage provided by Plaintiff.  (Compl. Exs. 11–13; *see Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458 (2d Cir. 2004) ("the setting in which a designation is used affects its appearance and colors the impression conveyed by it") (citation & quotations omitted).)

Accordingly, the first, second, third, fifth, and sixth causes of action in the Second Amended Complaint should be dismissed in their entirety.

### B.     Jomashop's Use of the Term "Red Gold" Is Protected by Fair Use

Even if Plaintiff had sufficiently pleaded likelihood of confusion—which it has not—the Second Amended Complaint should be dismissed, because Jomashop's use of the term "red gold" is protected by the doctrine of fair use.  *KP Permanent*, 543 U.S. at 121–22 ("fair use can occur along with some degree of confusion…" even for incontestable registration).  The fair use doctrine permits parties to use trademarked words or terms to "describe aspects of their own goods, provided the use is in good faith and not as a mark." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995); 15 U.S.C. § 1115(b)(4).  Fair use serves as an absolute affirmative defense to allegations of trademark infringement, dilution, and unfair competition under the Lanham Act.  *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) (finding no infringement due to fair use arising from use of "Seal it with a Kiss" as description accompanying product as well as good faith shown by prominent use

of defendant's own trademark); *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 309 (S.D.N.Y. 2010). Fair use exists where Jomashop's use of the term "red gold" was (1) other than as a mark; (2) in a descriptive sense; and (3) in good faith. 15 U.S.C. § 1115(b)(4); *Cosmetically Sealed*, 125 F.3d at 30. By the allegations and exhibits in the Second Amended Complaint alone, that is exactly how Jomashop has used the term and fair use exists as a matter of law.

While fair use is an affirmative defense, the Second Circuit has made clear that fair use may be decided on a motion to dismiss "where the facts necessary to establish the defense are evident on the face of the complaint." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (citation omitted); *see also JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 530 (S.D.N.Y. 2013) ("Although fair use is an affirmative defense… motion to dismiss [may be granted] where the alleged conduct is fair use as a matter of law."). Moreover, it is of no instance that Plaintiff's trademark right is incontestable: the fair use defense is applicable against any kind of trademark because "the public's right to use descriptive words or images in good faith in their ordinary descriptive sense must prevail over the exclusivity claims of the trademark owner." *Car-Freshner*, 70 F.3d at 269; *see also KP Permanent*, 543 U.S. at 124 (permitting a defendant to use a fair use defense against an incontestable trademark).

1.     Jomashop Did Not Use "Red Gold" As A Mark

The Second Circuit has determined that a word or phrase is used "as a mark" when it is used "as a symbol to attract public attention." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (citations & quotations omitted). By contrast, the non-trademark use of the same word or phrase is "evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks." *Cosmetically Sealed*, 125 F.3d at 30. Here, <u>all three</u> of Plaintiff's examples of allegedly infringing use by Jomashop on its website,

11

in Exhibits 11–13, are facially non-trademark use, as each is accompanied and preceded by the actual manufacturer's brand of the watch.

Unlike in the Related Cases, Jomashop is not the manufacturer responsible for producing the allegedly infringing watches. Rather, Jomashop is merely a reseller of the watches made and branded by prominent brands, such as Omega, Gucci, and Hublot. (*See* Jomashop Website, www. Jomashop.com.) Accordingly, Jomashop prominently displays the proper brand of the manufacturer for each product it sells. This is demonstrated clearly by each of Plaintiff's three examples of allegedly infringing watches: the **Gucci** Timeless Red Gold PVD Men's Watch (Compl. Ex. 11), the **Omega** brand Seamaster Aqua Terra Auto Grey Dial 18K Red Gold and Stainless Steel Men's Watch (*id.* Ex. 12), and the **IWC** brand Portugieser White Dial 18 Carat Red Gold Automatic Men's Watch (*id.* Ex. 13). (Compl. ¶¶ 25–27 (emphases added).) The prominent display of the true source of each watch, both on the watch itself and in the product title, are sufficient to establish the non-trademark use of "red gold." *Cosmetically Sealed*, 125 F.3d at 30–31; *1-800 Contacts*, 414 F.3d at 408–09 (reproduction of 1-800 Contacts website was non-trademark use because it did not place the mark on "any goods or services in order to pass them off as emanating from or authorized by 1-800"); *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 515–16 (S.D.N.Y. 2012) (description of a clip using the phrase "naked cowboy" was non-trademark use as a matter of law where the title of the series and CBS's recognizable logo were prominently displayed); *B&L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 353 (2d Cir. 1970) (use of the phrase "Come On Strong" was non-trademark use where accompanied by brand references "with Botany 500" and "tailored by Daroff" in prominent positions).

In addition, the phrase "red gold" in each product title is used to define a particular component of the watch. (*See* Compl. Exs. 11 (describing hands as "Luminous Red Gold-tone"

and bezel as "Fixed Red Gold PVD"), 12 ("18k Red Gold And Stainless Steel"), 13 ("18 Carat Red Gold Automatic Men's Watch" and describing case material as "18kt Red Gold").)  Plaintiff's allegations that the use of "red gold" was designed to benefit from Solid 21's brand and emphasis on the capitalization of the first letters of each word is inapposite: Plaintiff's own examples show that nearly every word of the watch title and details are capitalized, including, in one case, "Rose Gold[]," an admittedly generic term.  (Compl. ¶¶ 29–30, 36, Ex. 13 (capitalizing "Rose Gold[]", Exs. 11–12.)  The use of a phrase to describe the ingredients or components of a product, <u>rather than its origin</u>, is non-trademark use and thus fulfills the first element of fair use.  *B&L Sales Assocs.*, 421 F.2d at 353 (use of phrase "Come on Strong" was a common slang term meant to project a "commanding, confident, 'strong' image", rather than to identify the source); *Nature's Bounty, Inc. v. Basic Organics*, 432 F. Supp. 546, 553 (E.D.N.Y. 1977) (use of B-100 did not "indicate to the public the source or origin of the vitamin but merely describes its ingredients" and thus was non-trademark use).

Finally, unlike Plaintiff's watches, labeled and marketed as part of the "Signature RED GOLD Collection" by Chris Aire (*id.* ¶¶ 16–22), Jomashop's resale of products make no reference to either Aire or the all-caps "RED GOLD" Collection.  *Arnold v. ABC, Inc.*, No. 16-CV-1747 (GBD), 2007 WL 210330, at *2 (S.D.N.Y. Jan. 29, 2007) (finding that plaintiff failed to state claim for trademark infringement in part because plaintiff did not allege that defendant used any element of her trademark other than a "generically descriptive" phrase).

2.   <u>Jomashop's Use of "Red Gold" Was Purely Descriptive</u>

There is no indication that the Lanham Act was intended to "deprive commercial speakers of the ordinary utility of descriptive words," simply because another company "grabb[ed] it first." *KP Permanent*, 543 U.S. at 122.  Plaintiff is therefore not entitled, by virtue of its trademark

13

registration (incontestable or not), to "preclude another party from the description of his product to the public." *Para Labs. Inc. v. Better Botanicals, Inc.*, No. CV 98-1523, 1998 WL 670239, at *5 (E.D.N.Y. May 6, 1998). Rather, a word or phrase that has been trademarked by another party may be properly used to describe a "characteristic of the goods, such as size or quality" or more generally, a "descriptive sense." *Cosmetically Sealed*, 125 F.3d at 30 (holding that defendant used a phrase in its descriptive sense when it was used to describe an action the defendant hoped consumers would take using its product).

It is apparent, from the Second Amended Complaint and from counsel's statements at the September 5, 2019 pre-motion conference, that Plaintiff here explicitly seeks to preclude Jomashop (and, indeed, many other brands and manufacturers) from using the "ordinary utility" of the generic phrase "red gold" in commerce, in direct contravention to the dictates of the Supreme Court and the Second Circuit. *KP Permanent*, 543 U.S. at 122; *Car-Freshner*, 70 F.3d at 270 ("If any confusion results to the detriment of the markholder, that was a risk entailed in the selection of a mark with descriptive attributes."). As described above, "red gold" is used to identify a component of each watch identified by Plaintiff as allegedly infringing in the Second Amended Complaint. In two cases, the Omega watch (Ex. 12) and the IWC watch (Ex. 13), the phrase "red gold" is immediately preceded by "18k" or "18 carat," the standard way of identifying both a type of gold and how much of it make up the watch. (*See also* Compl. Ex. 14 (Breitling and Hublot watches each are identified as "18K Red Gold").) And in the detailed breakdown of the Gucci watch (Ex. 11), "red gold" is used twice to describe the contents or color of the watch's hands and bezel. (*See also* Compl. Ex. 14 (Omega Constellation watch is described as "Red Gold Mother of Pearl Diamond Stainless Steel and 18kt Rose Gold").)

Such uses are plainly descriptive of the material composing the allegedly infringing watches, and thus fulfill the second requirement of fair use.[4] *Car-Freshner*, 70 F.3d at 270 (use of a pine tree described two aspects of defendant's product and thus was fair use); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 12 (2d Cir. 1976) (holding that use of word "safari" was descriptive and fair use, properly focusing on the "use of words, not on their nature or meaning in the abstract") (citation & quotations omitted); *Para Labs.*, 1998 WL 670239, at *6 ("The use of the term 'Bath Therapy' is to describe a method of relief from pain and discomfort…" and thus did not infringe plaintiff's trademark); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 426 (S.D.N.Y. 2008) ("Most indicative of descriptive use is that [the mark] was used with other words to form a phrase describing the products."), *aff'd*, 329 F. App'x 333 (2d Cir. 2009).

### 3.   Plaintiff Fails to Sufficiently Allege that Jomashop Acted in Bad Faith

To determine whether Jomashop was acting in good faith, courts in the Second Circuit examine "whether the user of a mark intended to create consumer confusion as to source or sponsorship." *JA Apparel*, 568 F.3d at 401 (citation & quotations omitted). As discussed further above, Plaintiff has failed to allege any likelihood of or actual confusion of consumers as a result

---

[4] Plaintiff brazenly misstates settled trademark law in its allegation that, "[s]ince Jomashop does not need to use "RED GOLD" to describe its products, and could (and did) use other terms to describe its products, Jomashop's use of "RED GOLD" is plainly not descriptive (nor can it be, since it is Solid 21's trademark brand for watches and jewelry." (Compl. ¶ 30.) First, a trademark registration, even an incontestable one, does not afford Plaintiff a total monopoly over the use of the phrase "red gold." "While it is desirable to protect a person who has built up a public association with certain products under his trademark from having his business taken by somebody else, it is also undesirable to block the channels of expression by giving protection to everyone who may go out and appropriate an **ordinary descriptive word for his own business use**." *Para Labs.*, 1998 WL 670239, at *6 (emphasis added) (citation & quotations omitted); *Venetianaire Corp. of Am. v. A&P Import Co.*, 429 F.2d 1079, 1082 (2d Cir. 1970) (a plaintiff cannot "prevent even direct competitors from using such a common term to appropriately denominate or fairly describe a characteristic of their goods"). Second, the fact that there are alternative means by which to express a particular idea or, in this case, a component of the watch does not render "red gold" not descriptive. *Cosmetically Sealed*, 125 F.3d at 30–31 (finding the phrase "Sealed with a Kiss" descriptive); *Nature's Bounty*, 432 F. Supp. at 552 (finding B-100 descriptive even though it presented a more simplistic description of the complex B vitamin and other descriptors were available). Finally, Plaintiff ignores the fact that Jomashop, as reseller, did not select the terms used by the manufacturers of the allegedly infringing products to describe their watches, but rather was prudent to truthfully reproduce such terms on its website. That Jomashop has since changed the phrasing in an attempt to avoid needless litigation should not and cannot be considered any admission of infringing use, nor that another term could be properly substituted.

of Jomashop's use of the phrase "red gold" to describe its resale of genuine watches.  (*See supra*
§ I.A.)

Plaintiff's sole allegation as to Jomashop's intentionality with respect to its mark is patently
insufficient to satisfy even a basic pleading standard under *Iqbal*: it is made "upon information and
belief" and alleges merely that Jomashop "wanted to exploit the goodwill and cachet that Solid 21
had built," despite "full knowledge" or "willful[] blind[ness] or negligent disregard" of Plaintiff's
mark.  (Compl. ¶ 37.)   However, "prior knowledge of a senior user's trade mark" is not
"inconsistent with good faith." *Savin Corp.*, 391 F.3d at 460; *Car-Freshner*, 70 F.3d at 270 (failure
to consult counsel regarding descriptive use of pine-tree shape, despite knowledge of the mark,
"has no tendency to show bad faith").  Accurate use of a term having descriptive elements does
not plausibly allege an intent to infringe a mark which can be so used.  Moreover, the allegations
presented by Plaintiff in its pleading show that, in fact, Jomashop prominently displayed the proper,
well-known manufacturers brand for each allegedly infringing watch, thus acting in good faith to
distinguish its products from Plaintiff's. *JA Apparel*, 568 F.3d at 402 (finding good faith because
an attempt to distinguish products "is inconsistent with an intent to confuse").  Plaintiff has alleged
no set of facts that plausibly leads to the conclusion that Jomashop sought to exploit the goodwill
associated with the mark "RED GOLD" and has therefore failed to allege that Jomashop used the
phrase "red gold" in bad faith. *Arnold*, 2007 WL 210330, at *3; *Naked Cowboy*, 844 F. Supp. 2d
at 515–16.

As a result of the foregoing, this Court should dismiss the first, second, third, fifth and sixth
causes of action in the Second Amended Complaint. *Abercrombie*, 537 F.2d at 13 (affirming
dismissal of complaint based on fair use defense as a matter of law); *JBCHoldings NY, LLC*, 931
F. Supp. 2d at 531 (dismissing Lanham Act claim following finding that use of mark was "fair use

16

as a matter of law"); *Naked Cowboy*, 844 F. Supp. 2d at 516 (same); *Arnold*, 2007 WL 210330, at *3 (same).

### C.       Plaintiff Fails to Allege Facts Sufficient to State a Claim for Damages

Even if Plaintiff had properly stated a claim for trademark infringement, false description or unfair competition, the Second Amended Complaint should be dismissed because Plaintiff fails to state a claim that entitles it to damages, Plaintiff's only remaining avenue for relief.[5]  Courts in the Second Circuit make awards of damages "subject to the principles of equity," and so will not require a good faith defendant to pay damages when an injunction would suffice to protect the plaintiff from future harm.  *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 726 F. Supp. 25, 29 (E.D.N.Y. 1989).  In order to receive an award of damages under the Lanham Act, Plaintiff must plausibly allege and prove either "actual consumer confusion or deception resulting from the violation [or] that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion."  *Life Indus. Corp. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926, 932 (E.D.N.Y. 1993) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) (other internal citations & quotations omitted)).

As with the Second Amended Complaint's allegations of consumer confusion, Plaintiff has failed to plead any facts consistent with its burden to plausibly allege the equitable entitlement to actual damages.  Aside from a single conclusory statement that Jomashop's use of "red gold" "has caused, and/or is likely to cause confusion," Plaintiff makes no factual allegation concerning a single instance of actual confusion.  *Life Indus.*, 827 F. Supp. at 932 ("The actual consumer

---

[5] As Plaintiff concedes in the Second Amended Complaint, the term "red gold" does not now appear on Jomashop's website.  (Compl. ¶ 30.)  In the interests of judicial efficiency and speedy resolution of the present action, Jomashop has already indicated its willingness to enter into a voluntary injunction preventing it from using the term "red gold," making the only possible remaining issue to be litigated the question of damages.  (D.E. 12 (Request for Pre-Motion Conference).)

confusion standard is satisfied once a plaintiff has produced evidence of at least one instance of such confusion.") (citations omitted).  And, as described more thoroughly above, Plaintiff has not made any plausible, factually supported allegation that Jomashop acted in bad faith, or with the intent to co-opt Plaintiff's goodwill.  (*See supra* § II.B.3.)  *Mattel, Inc. v. Robarb's, Inc.*, 139 F. Supp. 2d 487, 496 (S.D.N.Y. 2001) (absence of evidence rebutting indication of good faith by defendant "precludes [Plaintiff] from receiving damages").

Since Plaintiff has failed to plead any facts to meet the requirements for damages, its only remaining form of relief, the first, second, third, fifth, and sixth causes of action causes of action in the Second Amended Complaint should be dismissed.

## II.  Plaintiff Fails to State a Claim for Trademark Dilution Under Both the Lanham Act and New York Law

Plaintiff's fourth and seventh causes of action are for trademark dilution under the Lanham Act and under New York law.  Initially, with no further analysis than already performed above, those claims should be dismissed, since fair use is an affirmative defense to dilution claims, as well as infringement claims.  *See JA Apparel*, 682 F. Supp. 2d at 309; *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 434 n.3 (S.D.N.Y. 2016) (concluding that state law dilution claims fail where a defendant establishes fair use for the purposes of federal law because the laws are "substantially similar"), *aff'd*, 674 F. App'x 16 (2d Cir. 2016).  Because Jomashop's use of the term "red gold" is purely descriptive and fulfills the requirements of fair use stated above, it cannot constitute trademark dilution under federal or state law.  (*See supra* § II.B.)

Even if Jomashop's use had not constituted fair use, Plaintiff's dilution claims still fail.  In order to state a claim for trademark dilution under 15 U.S.C. § 1125(c), Plaintiff must establish that (1) its mark is famous and distinctive; (2) the mark is being used in commerce by the defendant; and (3) defendant's use is likely to cause dilution.  *Boarding School Review, LLC v. Delta Career*

*Educ. Corp.*, No. 11 CIV. 8921 (DAB), 2013 WL 6670584, at *7 (S.D.N.Y. Mar. 29, 2013).[6]  A mark is famous where it is "widely recognized by the general consuming public of the United States" as designating a "single source of goods." *Id.* (citation omitted).  The Second Amended Complaint fails to plausibly allege either that its mark is famous, under the Second Circuit's definition thereof, or that Jomashop's use is likely to cause dilution.

In order to achieve protection from trademark dilution, the mark in question must be "almost universally recognized by the general public," thus reserving claims to "truly famous marks" such as Budweiser, Camel, and Barbie dolls. *Id.* (citation & quotations omitted).  "[F]ame limited to a particular channel of trade, segment of industry or service, or geographic region is not sufficient to meet that standard." *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 472 (E.D.N.Y. 2009) (citation & quotations omitted).  Plaintiff makes only a conclusory allegation of fame with no record facts of such recognition, and no allegation as to the fame of its mark outside of the context of luxury watches and jewelry.   (Compl. ¶ 18 ("RED GOLD® mark has become famous, distinctive, and associated with, *inter alia*, luxury watches offered by Solid 21.").)  On that basis alone, Plaintiff has failed to state a claim for trademark dilution. *Id.* (mark that had acquired distinctiveness through secondary meaning was not entitled to protection from dilution under the Lanham Act absent evidence that it was "truly famous").

In addition, Second Circuit courts provide four relevant factors to determine whether a mark is famous enough to merit protection by Lanham Act dilution claims: (1) "duration, extent, and geographic reach of advertising and publicity of the mark;" (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark;" (3) "[t]he extent of actual

---

[6] Plaintiff's New York state law claim for dilution is the same as the standard under the Lanham Act, except that New York law does not require that a mark be famous before it is entitled to protection from dilution. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009).

recognition of the mark;" and (4) "[w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. Jan. 11, 2012). Outside of listing a handful of cities in which its products were allegedly shown and advertised, Plaintiff fails to allege facts establishing <u>any</u> of these relevant factors. (Compl. ¶¶ 15–21.) Plaintiff provides no sales figures, no data on how long and in what time period its mark was advertised, or data or verified reports of how well the public recognizes its mark. (*Id.*) Even its proffered advertisements fail to provide support: Plaintiff offers no information concerning the time in which each advertisement was published, where each advertisement ran, and, in one case, the advertisement does not even mention RED GOLD.  (Compl. Exs. 6–9 (Exhibit 7 does not mention RED GOLD and only markets the watch as an "Aire" product).)

In light of the purely conclusory allegations concerning RED GOLD's fame without any supporting facts to establish the factors set forth by Second Circuit courts, Plaintiff has failed to sufficiently allege that its mark is entitled to protection from dilution. *See Grossman*, 706 F. Supp. at 229; *Dow Jones*, 451 F.3d at 307. Therefore, Plaintiff's third cause of action for trademark dilution under the Lanham Act and seventh cause of action for state law dilution should be dismissed in their entirety.

## III.   <u>Plaintiff Fails to State a Claim Under New York General Business Law § 349</u>

Failing to state a plausible claim for trademark infringement, false description, unfair competition, or dilution, Plaintiff attempts to rely upon New York General Business Law ("G.B.L.") § 349 as a basis for relief. This effort, too, fails. To state a claim under N.Y. G.B.L. § 349, Plaintiff must demonstrate that (1) Jomashop's deceptive acts were directed at consumers; (2) the acts were materially misleading; and (3) Plaintiff has been injured as a result of defendant's

actions. *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Most significantly, the Second Circuit has determined that a commercial claimant must allege conduct that has "significant ramifications for the public at large" in order to state a claim, including, by way of example, "potential danger to the public health or safety." *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (citation & quotations omitted). Therefore, "trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers that is required to state a claim under section 349." *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 CIV. 5150 (JFK), 1997 WL 137443, at *3 (S.D.N.Y. 1997); *Wilson v. Nw Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) ("the acts or practices [must] have a broader impact on consumers at large") (citation & quotations omitted).

Here, Plaintiff fails to allege any harm to the public interest beyond conclusory allegations of consumer confusion. (Compl. ¶¶ 35–37, 80–82.) Since Plaintiff failed to meet the threshold requirement of alleging that the matter affects the public interest of consumers in New York, its eighth cause of action under N.Y. G.B.L § 349 must be dismissed. *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 34, 37 (E.D.N.Y. 2006) (allegations of harm to business rather than harm to consumers dictate dismissal of G.B.L. claim), *aff'd*, 213 F. App'x 16 (2d Cir. 2007).

## IV.    In the Alternative, The Present Action Should Be Stayed, Pending Resolution of the Cases Involving The Brands Producing the Watches at Issue

In the event that Jomashop's motion to dismiss is not granted in its entirety, the Court should continue its prior stay of proceedings pending the resolution of the Related Cases. It is well-settled law that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The grant of a stay is an exercise in equity that involves a balancing of five factors: (1) the private

interests of the plaintiff in proceeding as compared to the prejudice to plaintiff from delay; (2) the private interests of and burden on defendants; (3) the courts' interest; (4) the interests of any person who is not party to the litigation; and (5) the public interest. *Marine Travelift, Inc. v. K. Graefe & Sons Corp.*, No. 16 CV 2068 (VB), 2016 WL 8711453, at *2 (S.D.N.Y. June 3, 2016).  Here, all five factors point in favor of staying any proceedings in this matter pending the resolution of the Related Cases.  *Id.* ("The party seeking a stay 'bears the burden of establishing its need.'") (citation omitted).

Since Plaintiff concedes that all instances of "red gold" have been taken down from the descriptions of the Allegedly Infringing Products on Jomashop's website (Compl. ¶ 30), there is no harm to Plaintiff in staying the present proceedings until it is determined whether the conduct of defendants in the Related Cases—who actually adopted the phrase "red gold" to describe the products merely resold by Jomashop—constitutes trademark infringement.  *Wing Shing Prods. (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, No. 01 CIV. 1044 (RJH) (HBP), 2005 WL 912184, at *3 (S.D.N.Y. Apr. 19, 2005) (finding no ongoing harm because defendant was no longer manufacturing the allegedly infringing product).  By contrast, there is substantial potential harm to Jomashop in continuing to litigate this case, since Plaintiff's statements in conferences make clear that its primary interests in proceeding with the litigation are to exploit the discovery process to impose significant costs upon Jomashop to force a monetary settlement.  *Alvarado v. GC Dealer Servs. Inc.*, No. 18-CV-2915-SJF-SIL, 2018 WL 6322188, at *2 (E.D.N.Y. Dec. 3, 2018) ("discovery requests based on pure speculation that amount to nothing more than a fishing expedition" are improper) (citation & quotations omitted).

Moreover, the interests of judicial efficiency would be served by staying all future proceedings until the resolution of the Related Cases.  Since the Second Amended Complaint

shows that Jomashop is a mere reseller of already manufactured branded goods, the issue of whether the manufacturers' descriptive use of "red gold" violates Plaintiff's trademark is more properly litigated by those who actually chose to use that term to describe their goods: the brands themselves. *Marine Travelift*, 2016 WL 8711453, at *2 (granting a stay to a purchaser where a pending case against manufacturer involved same factual evidence and required discovery and where the legal question turned on validity of same patent).

The balance of factors and the exercise of equity by the Court counsels in favor of granting Jomashop's motion to continue the present stay of proceedings, should the Court determine that dismissal is not yet appropriate.

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety with prejudice or, in the alternative, the Court should stay the present action pending resolution of the Related Cases.

Dated: New York, New York
     October 17, 2019

                         PRYOR CASHMAN LLP

                         By:   *s/William Thomashower*
                             William Thomashower, Esq., Counsel
                             Rebecca L. Matte, Esq.
                             7 Times Square Tower
                             New York, NY 10036
                             Tel: 212-421-4100
                             wthomashower@pryorcashman.com
                             rmatte@pryorcashman.com

                             *Attorneys for Defendant,*
                             JOMASHOP INC. f/k/a GIFTPORTS INC.